# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 11-21956-CIV-ALTONAGA/Simonton

**PRINCIPAL LIFE INSURANCE COMPANY**,

      Plaintiff,

vs.

**RUBEN ALVAREZ**,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court upon Defendant, Ruben Alvarez's ("Alvarez['s]")

Motion to Dismiss and to Strike ("Motion") [ECF No. 35], filed August 4, 2011.  Defendant seeks

to dismiss one claim of Plaintiff, Principal Life Insurance Company's ("Principal['s]") Amended

Complaint [ECF No. 26] under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and to strike

the same claim under Rule 12(f).   The Court has carefully considered the parties' written

submissions and applicable law.

## I.  BACKGROUND[1]

On April 26, 2010, Principal issued a life-insurance policy (the "Policy") to Raul Miro with

a $1 million face value.  (*See* Am. Compl. ¶¶ 5, 7).  Miro named his wife, Elizabeth Lopez, as his

primary beneficiary.  (*See id.* ¶ 9).  When applying for the Policy, Miro represented he had an annual

income of $100,000.  (*See id.* ¶ 10).  A few months later, on July 9, 2010, Miro changed the Policy's

beneficiary to Defendant, Ruben Alvarez.  (*See id.* ¶¶ 16–17).  Purportedly, this is because Miro

---

[1]  The allegations of Plaintiff's Amended Complaint are taken as true.

owed Alvarez $2 million.  (*See id.* ¶ 17).

In December 2010, Miro traveled to Mexico.  (*See id.* ¶ 21).  While in Nezahualcoyotl, Mexico, Miro was gunned down, dying as a result of "multiple gunshot wounds."  (*Id.*).  Alvarez may have been present when this occurred.  (*See id.*).  Roughly one month later, on January 11, 2011, Alvarez made a claim under the Policy for the $1 million death benefit.  (*See id.* ¶ 23).

The Policy[2] required all potential insureds to represent that all statements made in the application were made to the best of the insureds' knowledge.  (*See id.* ¶¶ 11–13) (quoting Am. Compl. Ex. 1 Pts. C, D, Amendment and Acceptance Form [ECF No. 27-1]).  The Policy warned that "misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period."  (*Id.* Pts. C, D).  Principal reserved the right to contest the Policy for two years after the date it went into force, and for two years after certain changes occurred.  (*See id.* p.14).

On December 21, 2010, Principal informed Alvarez, by letter, that it was performing a contestable investigation.[3]  (*See* Am. Compl. ¶ 24).  During the course of the investigation, Principal received copies of Miro's U.S. tax returns for the years 2007 through 2009.  (*See id.* ¶ 29).  Those returns demonstrate Miro made material misrepresentations or omissions on the Policy application regarding his income.  (*See id.* ¶ 30).  Principal, had it known Miro's true income, would not have

---

[2] Plaintiff has attached the Policy to the Amended Complaint.  (*See* [ECF No. 27-1]).  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  FED. R. CIV. P. 10(c).  "Under Rule 10(c) . . . such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."  *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

[3] Principal began performing this contestable investigation before Alvarez filed a claim for death benefits under the Policy.  (*See* Am. Compl. ¶¶ 22, 24).

Case No. 11-21956-CIV-ALTONAGA/Simonton

issued the Policy. (*See id.* ¶ 31). This is because Miro was "not eligible" to obtain a $1 million life-insurance policy. (*Id.* ¶ 32).

Although Principal has not yet completed its contestable investigation (*see id.* ¶ 28), Principal advised Alvarez on July 20, 2011 that it was rescinding the Policy and denying the claim for death benefits (*see id.* ¶ 33). Principal, in its Amended Complaint, now seeks a declaratory judgment and rescission of the Policy. In the declaratory-judgment claim, Principal seeks two declarations concerning (1) whether because Miro made material misrepresentations, the Policy is void and unenforceable from its commencement, and (2) Principal may complete its "routine contestable investigation." (*Id.* ¶¶ 37–42). In the rescission claim, Principal contends Miro misrepresented his true income, that misrepresentation was material to Principal's risk in issuing the Policy, and that without the misrepresentation Principal would not have issued the Policy. (*See id.* ¶¶ 44–47). Principal, therefore, states it has the right to "void coverage" and rescind the Policy.[4] (*Id.*).

Alvarez now moves to dismiss the declaratory-judgment claim under Rules 12(b)(1) and

---

[4] Although Alvarez does not seek to dismiss the rescission claim, the Court notes that the claim fails to meet Rule 8's pleading standards. Rule 8(a)(3) requires a demand for the relief sought. *See* FED. R. CIV. P. 8(a)(3). In Principal's "Relief Requested" clause, it seeks only a declaration on two issues, as well as any other relief the Court deems appropriate. (*See* Am. Compl. p.11). It makes sense that Principal did not specifically identify rescission of the Policy as relief sought because the rescission claim is moot — Principal has already rescinded the Policy. (*See id.* ¶ 33). Where a case is moot, courts lack subject-matter jurisdiction. *See Finstad v. Fla., Dep't of Bus. & Prof'l Regulation*, 295 F. App'x 352, 353–54 (11th Cir. 2008). "[A] district court must *sua sponte* inquire into subject matter jurisdiction, and may dismiss a case, whenever it may be lacking." *McGee v. YWCA Miami-Dade Cnty.*, No. 11–22410–Civ, 2011 WL 3235983, at *1 (S.D. Fla. July 28, 2011) (citing FED. R. CIV. P. 12(h)(3); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

Because Principal has already rescinded the Policy (*see* Am. Compl. ¶ 33), the claim to now rescind the Policy is moot. The Court thus *sua sponte* dismisses Principal's second claim. The Court does not, by this Order, bar Principal from raising rescission as an affirmative defense to Alvarez's counterclaim.

Case No. 11-21956-CIV-ALTONAGA/Simonton

12(b)(6), and to strike the claim under Rule 12(f).  (*See* Mot.).

## II.  LEGAL STANDARDS

### A.  12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### B.  12(b)(1)

A defendant may attack subject-matter jurisdiction under Rule 12(b)(1) in two ways — a facial attack or a factual attack.  A facial attack asserts that a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint.  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  In a facial attack, the plaintiff's allegations are taken as true for the purposes of the motion, *see id.*, and the plaintiff is afforded safeguards similar to those provided in challenging a Rule 12(b)(6) motion.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

In contrast, a factual attack "challenges the existence of subject matter jurisdiction in fact,

irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511.  In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case.  *See Lawrence*, 919 F.2d at 1529.  No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim.  *See id.*  Moreover, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted).

### C.  12(f)

Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Nevertheless, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citing *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978); *Bazal v. Belford Trucking Co.*, 442 F. Supp. 1089, 1101 (S.D. Fla.1977); *Augustus v. Bd. of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)).  Thus, "[m]otions to strike generally are disfavored and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 04-Civ-60861, 2005 WL

Case No. 11-21956-CIV-ALTONAGA/Simonton

975773, at *11 (S.D. Fla. March 4, 2005).[5]

### III.   ANALYSIS

#### A.   Declaratory Judgment

Principal files its declaratory-judgment claim under 28 U.S.C. §§ 2201, 2202. (*See* Am. Compl. ¶ 36). Section 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "'The purpose behind the Declaratory Judgment Act is to afford a[ ] form of relief from uncertainty and insecurity with respect to rights, status and other legal relations.'" *Advanced Fluids Solutions, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, No. 6:11–cv–16–Orl–22KRS, 2011 WL 3627413, at *4 (M.D. Fla. July 26, 2011) (quoting *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009)).

To properly seek a declaratory judgment, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; . . . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). The Supreme Court has summarized the declaratory-judgment inquiry as "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between

---

[5] Although nominally the Motion is to dismiss *or* strike, Alvarez focuses almost exclusively on dismissal, and seemingly as an afterthought, occasionally throws in the request "or stricken." (*See, e.g.* Mot. 9). He neither focuses on the different standards nor presents any different arguments in support of striking.

6

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The "controversy" may not be "'conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of injury.'" *Advanced Fluids Solutions*, 2011 WL 3627413, at *4 (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)).

"The concept of adverse legal interests requires that there be a dispute as to a legal right, such as an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff had preempted it." *Creative Compounds, LLC v. Starmark Labs.*, No. 2010–1445, 2011 WL 2519513, at *11 (Fed. Cir. June 24, 2011) (quoting *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1374–75 (Fed. Cir. 2011)).

**B.  There Is Clearly A Dispute Between the Parties**.

Defendant's Motion is, in many ways, disingenuous.  He begins with the premise that there is no case or controversy, labeling the declaratory-judgment claim as "based solely on contingencies that may never occur . . . ." (Mot. 5).  Alvarez continues, stating the claim presents "an abstract issue based on a hypothetical set of facts; it fails to present an actual controversy, and is not ripe, within the meaning of the Declaratory Judgment Act." (*Id.*).  Before delving into the minutiae of Principal's declaratory-judgment claim, the Court must admit to some surprise that Alvarez takes the position no controversy exists between the parties.  The parties are clearly in antagonistic positions: Alvarez says "pay me," Principal says "no, the Policy is void."  Furthermore, if there is no controversy between the parties, the Court should dismiss Alvarez's counterclaims for failing to raise a case or

controversy.

Next, the Court notes the diametrically opposed positions Alvarez has taken throughout the life of this suit. In Alvarez's original motion to dismiss, seeking to dismiss the original complaint, Alvarez took the position that because Principal had not yet denied Alvarez's claim under the Policy, the declaratory-judgment claim was not yet ripe. (*See* Original Mot. 6 [ECF No. 7]). He cited cases to the Court indicating that until an insurance claim is denied, there is no controversy. (*See id.* 6–7).

Subsequent to Alvarez filing his original motion, Principal did, in fact, deny Alvarez's claim. (*See* Am. Compl. ¶ 33). Even after Principal did what Alvarez insisted Principal must do to state a case or controversy, Alvarez still insists there is no case or controversy. (*See* Mot.). Both positions cannot be correct.

Alvarez also contends that because the case was not ripe when filed, it must now be dismissed. (*See id.* 6). Assuming for the moment that Alvarez is correct that the original complaint was filed before the case was ripe, it is undoubtedly ripe now (in fact, it may have swung so far as to now be moot). At the present date, when the Court is ruling, the case is ripe and need not be dismissed on that ground. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974); *Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir. 1986) (not dismissing a case where although not ripe at filing, the case had ripened when the district court ruled).

Now, turning to Principal's declaratory-judgment claim, Principal asserts it possesses certain rights and lists many allegations it believes Alvarez disputes. (*See* Am. Compl. ¶¶ 38–40). It then seeks a declaration on two questions: "(i) that the Policy is void from its inception due to Miro's material misrepresentations in the Application; [and] (ii) that because Miro died during the

Case No. 11-21956-CIV-ALTONAGA/Simonton

contestable period, Principal Life has the right to complete a contestable investigation . . ." (*Id.* p.11).

### 1. *Principal May Seek a Declaration of Whether the Policy is Void.*

Looking at the first requested declaration — that the Policy is void — Principal is really seeking the Court's blessing for an action — rescinding the Policy — it has already taken. Even though Alvarez avers the declaratory-judgment claim was not ripe prior to rescission, because rescission has now occurred, even Alvarez should concede the claim has ripened. In fact, Alvarez barely discusses this first declaration request beyond asserting it cannot ripen post-filing and still be adjudicated.[6] The Court has disposed of that contention above.

### a. *Principal is Not Prematurely Addressing Bad Faith.*

Alvarez does present an argument concerning bad faith that, while not specifically referencing Principal's first requested declaration — that the Policy is void — may be interpreted as addressing it. Alvarez asserts the declaratory-judgment claim "should be dismissed or stricken since it seeks a judgment which would effectively endorse Principal's investigation of Alvarez's claim, and preclude any bad faith claim Alvarez might choose to later assert against Principal." (Mot. 9). Putting aside for the moment Principal's right to perform the contestable investigation, the Court simply does not view Principal's claim as Alvarez does.

Alvarez correctly notes that he cannot litigate a bad-faith claim simultaneously with a coverage dispute. (*See id.*); *see also St. Paul Fire & Marine Ins. Co. v. Jablonski*, No. 2:07-cv-386-

---

[6] In a footnote, Alvarez asks that this portion of the first claim be stricken as redundant of the second claim (for rescission). (*See* Mot. 4 n.2). Having dismissed the rescission claim as moot (*see supra* note 4), Alvarez's claim of redundancy need not be addressed.

FtM-29SPC, 2008 WL 1990471, at *3 (M.D. Fla. May 5, 2008) (citing *Progressive Select Ins. Co. v. Shockley*, 951 So. 2d 20 (Fla. 4th DCA 2007)).   He therefore states "Principal's request is premature, mandating dismissal or striking of Count I." (*Id.*).  Notwithstanding the fact that Alvarez presents no coherent connection between Principal's right to a declaration and Alvarez's right to assert a bad-faith claim, he does not explain why Principal's claim concerning whether or not there is any coverage (i.e., seeking a declaration that the Policy is void) is premature just because a bad-faith claim would be premature.  Principal is only questioning coverage.

If Principal prevails and receives a determination that the Policy is in fact void because of Miro's fraud, and as a result there is no coverage, the practical effect may very well be that Alvarez will not be able to present a bad-faith claim.  This will not be, however, due to some procedural wormhole that sends Alvarez's bad-faith claim off to Romulus.  Rather, it will be because Principal is correct, there is no coverage, and therefore it could not have acted in bad faith in denying Alvarez's claim.  "If there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim." *OneBeacon Ins. Co. v. Delta Fire Sprinklers, Inc.*, 898 So. 2d 113, 115 (Fla. 5th DCA 2005) (quoting *Hartford Ins. Co. v. Mainstream Constr. Grp., Inc.*, 864 So. 2d 1270, 1271 (Fla. 5th DCA 2004)).  The present case concerns whether or not Miro possessed life-insurance *coverage* at death; whether his fraud voided the Policy.  It is not to endorse Principal's investigation or state Principal acted in good faith.[7]

---

[7]  If the Court accepted Alvarez's argument, there could never be a claim concerning coverage because the opposing party could always say the suit is to either absolve the carrier of bad faith, or the suit is to prove bad faith prematurely.  For example, following Alvarez's reasoning, the Court could say Alvarez's

Case No. 11-21956-CIV-ALTONAGA/Simonton

b. *Alvarez Has Not Met His Burden.*

In the end, it is Alvarez's burden to demonstrate that Principal has not stated a claim. *See Larsen v. AirTran Airways, Inc.*, No. 8:07CV00442 T17TBM, 2007 WL 2320592, *3 (M.D. Fla. Aug.10, 2007). He has not done so.[8] Regarding his Rule 12(b)(1) request, there is undoubtedly a "case or controversy" between the parties. As described, Alvarez demands payment under the Policy, Principal says no, no soup for you. Alvarez has confirmed as much by filing the counterclaim.

**2.  *Principal's Request for a Declaration on Whether its Investigation May Continue.***

Regarding Principal's second request for a declaration — that it has a right to continue its contestable investigation — Alvarez "does not dispute that Principal has the right to investigate the veracity of representations made by Miro."[9] (Mot. 8). Nevertheless, he appears to contest that

---

counterclaims are improper vehicles to *prove* Principal acted in bad faith, prior to a finding of coverage. That, of course, is ridiculous — the counterclaims are filed to *determine coverage*. The question of coverage is of paramount importance to the counterclaims; there could only be a breach of the Policy if coverage exists. But if the Court finds (1) coverage, and (2) that there was a breach of the Policy by not paying, then the Court would be, in essence, supporting Alvarez's bad-faith claim. Alvarez's contention relegates these claims into perpetual circular arguments, like which came first, the chicken or the egg.

   [8] In fact, Alvarez has helped Principal's position. Alvarez cites Federal Procedure Lawyers Edition section 23:36 for the proposition that "[t]he relief sought in Count I does not fall within any of the following accepted uses of the declaratory judgment vehicle . . . ." (Mot. 9) (quoting 10 Fed. Procedure Lawyers Ed. § 23:36). Alvarez quotes section 23:36, which lists eight "accepted uses" for declaratory judgments. (*Id.*). The first "accepted use" is to determine "'whether a particular policy is invalid or void, or no longer in force . . . .'" (*Id.*) (quoting 10 Fed. Procedure Lawyers Ed. § 23:36). It is unclear why Alvarez considers that Plaintiff's request — seeking to declare "that the Policy is void from its inception . . . ," (Compl. p.11) — does not fit within that first-quoted accepted use for declaratory judgments.

   [9] This statement by Alvarez appears to concede that Principal may continue its contestable investigation. If that were the case, the Court would find this request moot. But since Alvarez goes on to challenge Principal's continued investigation, the claim is not mooted. (*See* Reply 3–5, 7 [ECF No. 46]).

11

Principal may *continue* its investigation.  (*See* Reply 3–5, 7).  It would then appear, facially, that there is a controversy between the parties — Principal asserts it may continue investigating, and Alvarez says it may not.  "[T]here is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

Alvarez continues, stating that the Court cannot grant the requested relief.  (*See* Reply 4).  Alvarez chides Principal for citing no law in support of its request.  (*See id.*).  And yet, Alvarez goes on to cite no law specifically supporting his position that the Court cannot grant this type of relief.  Principal's request falls within one of the Alvarez-cited "accepted uses" for a declaratory judgment — "whether the insurer has a duty to defend and indemnify the defendant."  (Mot. 9) (quoting 10 FED. PROCEDURE LAWYERS ED. § 23:36).  Although not precisely asking that question, Principal is seeking to determine its duties.

### 3. *The "Mend the Hold" Doctrine Does Not Bar Principal from Amending the Amended Complaint.*

Finally, Alvarez asserts that Principal has no right to amend the reason it denied Alvarez's claim.  (*See id.* 10–11).  He contends this is barred under the "mend the hold" doctrine.  (*Id.*)

At certain times, "when an insurer specifies the ground upon which it denies coverage to its insured, and the insured pursues a course of action in reliance on the insurer's asserted defense, the insurer is estopped to raise a new ground upon which to deny coverage."  *Am. States Ins. Co. v. McGuire*, 510 So. 2d 1227, 1229 (Fla. 1st DCA 1987).  The court in *American States Insurance* considered the question "whether an insurer may be estopped to deny coverage on the basis of an otherwise valid defense, when that defense had not been asserted in a *timely* fashion."  *Id.* at 1228

12

Case No. 11-21956-CIV-ALTONAGA/Simonton

(emphasis added). That case, however, is readily distinguishable from the present case because of its timing and procedural posture. In *American States Insurance*, the parties proceeded on the insurance company's defense through summary judgment, a rehearing, and an appeal:

> In this case, American States initially limited its denial of coverage to the lack of bodily injury, within the meaning of the policy. American States adhered to the bodily injury issue as its sole defense until it filed an answer brief in the first appeal. By that time, the McGuires had incurred expense in litigating the motions for summary judgment and rehearing and in prosecuting the first appeal.

*Id.* at 1230. In *American States Insurance*, it was the advanced state of the case that guided the court's conclusion. *See generally, id.* The court also found the insurance company's conduct was proscribed by Florida Statute section 627.426(2). *See id.* at 1230 n.4; FLA. STAT. § 627.426(2). It was the same advanced stage of litigation that shaped the court's decision in *Heimer v. Travelers Ins. Co.*, 400 So. 2d 771, 772–74 (Fla. 3d DCA 1981), along with the dilatory tactics of the defendant. Thus far, the Court is aware of no such dilatory tactics here.

Alvarez does not cite the Southern District of Florida case *Trans Ocean Container Corp. v. Yorkshire Ins. Co.*, 81 F. Supp. 2d 1340 (S.D. Fla. 1999). It is apparent that Alvarez received his case law from the law review article *Mending The Hold In Florida: Getting A Better Grip On An Old Insurance Doctrine*. *See* Vincent Laurato, Sr., *Mending the Hold in Florida: Getting a Better Grip on an Old Insurance Doctrine*, 4 FLA. A & M U. L. REV. 73 (2008); (*see also* Reply 5). That article goes through a handful of cases, and then states "[p]erhaps the purest Florida 'mend the hold' case is found in the Southern District of Florida's opinion in *Yorkshire Ins. Co.*" Laurato, *supra* at 83. The court in *Yorkshire Insurance* noted that waiver of a ground for denying coverage was only appropriate where the insurer had knowledge of the particular defense at the "initial denial of

13

Case No. 11-21956-CIV-ALTONAGA/Simonton

coverage." *Yorkshire Ins.*, 81 F. Supp. 2d at 1347.  The court continued, stating

> In other words, if an insurer recognizes the applicability of a
> particular defense based upon evidence uncovered subsequent to an
> initial denial of coverage, that insurer should not be precluded from
> using such a defense on the theory that the defense was waived in the
> initial denial of coverage — particularly where there is no evidence
> to indicate that an insured relied upon a waiver to its detriment.

*Id.*  Here, Principal is investigating to find other defenses.  By investigating to *find new* defenses,

Principal is implicitly stating it does not now know of those defenses.  Under the not-cited-by-

Alvarez *Yorkshire Insurance* decision, the "mend the hold" doctrine would not bar Principal from

asserting new, subsequently found defenses.

Finally, in contrast to the situation in *American States Insurance* and *Heimer*, the parties here

are not even out of the pleading stage.  Indeed, the parties are permitted to amend their pleadings

until October 12, 2011, largely because Alvarez sought an extension of the original Scheduling

Order.  (*See* [ECF No. 33]).  Based on these facts, there would be no prejudice should Principal

decide to amend the Amended Complaint.  Contrary to Alvarez's fear that he will "be required to

perpetually defend a moving target" (Mot. 10), the possibility of the "target" moving is ephemeral;

the "target" is frozen in place beginning on October 13, 2011.  Principal is not currently barred from

amending by the "mend the hold" doctrine.[10]

---

[10]  Moreover, Principal has not — at least on the face of the Amended Complaint — violated Florida
Statute section 627.426(2).  That section requires, in relevant part, that "[w]ithin 30 days after the liability
insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert
a coverage defense is given to the named insured by registered or certified mail sent to the last known address
of the insured or by hand delivery . . . ."  FLA. STAT. § 627.426(2)(a).  If Principal is still investigating, it
cannot know of a coverage defense it has not yet discovered.  Alvarez could, *if* Principal later amends and
adds a new ground for the denial of Alvarez's claim under the Policy, reassert this defense at the summary-
judgment stage should the facts fall in his favor.

Case No. 11-21956-CIV-ALTONAGA/Simonton

## IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 35]** is **DENIED**.  Claim

I may proceed, but Claim II is dismissed.[11]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of September, 2011.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[11]  Finally, the Court notes that from a practical standpoint, briefing of the Motion to Dismiss and this Order have been largely a waste of paper (and time) once Alvarez filed his counterclaim.  Considering that Principal seeks no monetary or affirmative relief from Alvarez (just a declaration and rescission), and Principal is able to raise all of the same "claims" here as affirmative defenses to Alvarez's counterclaim, even if the Court dismissed the Complaint, there would be no advancement toward the ultimate resolution of this case.